**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**
------------------------------------------------------------x
**IN RE**                                     :
                                              :
**LALITA DEVI SUKHRAM and**                   :   **Chapter 7 Case No.**
**ESHWAR NAUTH SUKHRAM**                       :
                                              :   **11-42627 (JF)**
                                              :
**Debtors.**                                  :
                                              :
------------------------------------------------------------x

**Hearing Date: November 27, 2012**
**Hearing Time: 10:00am**

<u>**OBJECTION TO TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING A
RULE 2004(a) EXAMINATION AND AN ORDER DIRECTING THE
PRODUCTION OF DOCUMENTS**</u>

U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
-------------------------------------------------------------x
IN RE                                              :
                                                   :
LALITA DEVI SUKHRAM and            :    Chapter 7 Case No.
ESHWAR NAUTH SUKHRAM            :
                                                   :    11-42627 (JF)
                                                   :
Debtors.                                       :
                                                   :
-------------------------------------------------------------x


**DEBTORS' OBJECTION TO TRUSTEE'S APPLICATION FOR AN ORDER
AUTHORIZING A RULE 2004(a) EXAMINATION AND ORDER DIRECTING THE
PRODUCTION OF DOCUMENTS**

1.      Debtors Lalita Devi Sukhram ("Ms. Sukhram") and Eshwar Nauth Sukhram ("Mr.

Sukhram," and together with Ms. Sukhram, the "Debtors"), by and through undersigned

counsel, hereby oppose the November 2, 2012 application (the "Application") by Trustee

Robert L. Geltzer, (the "Trustee") for an order authorizing examination pursuant to Rule

2004(a) of the Federal Rules of Bankruptcy Procedure and an order directing the

production of documents pursuant to Rule 2004(c) of the Federal Rules of Bankruptcy

Procedure. The Trustee already conducted Rule 2004(a) examinations of the Debtors on

March 21, 2012, and the Debtors provided a plenitude of documentation to the Trustee,

as detailed below. This Court issued an order dated February 29, 2012 limiting the

production of documents by the Debtors. This Court entered an order granting the

Debtors a discharge on September 13, 2011. The Trustee notes that Rule 2004

examinations have been compared to fishing expeditions, and argues that on this basis the

Debtors should be required to attend further Rule 2004 examinations and submit to more

document production. What the Trustee fails to note is that he has already undertaken a fishing expedition, and there is no more fishing left to do. There is no evidence of unlawful behavior by the Debtors. The Trustee's motion should be denied.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Bankruptcy Court.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

3.    On March 30, 2011, Mr. Sukhram and Ms. Sukhram, husband and wife, commenced a voluntary case under Chapter 7 of Title 11 of the United States Code.

### Events leading up to filing for bankruptcy

4.    In October 2006, Mr. Sukhram was laid off from his job at Forest Laboratories, Inc.  He then found a job working the night shift at Kawasaki Rail Cars in Yonkers in November of 2006.  Sukhram Affs., Debtors' October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. A ¶ 2.  With the money he received from Forest Laboratories, Inc. as his severance pay, about $15,000.00, and money from his 401K, about $2500.00, he and Ms. Sukhram decided to start a bakery because it was always their dream to own a business. Id. They leased a restaurant located at 188-03 Jamaica Ave., Jamaica for about $2,300 a month for the first year.  The rent increased each year.  They also purchased $40,000 in used restaurant equipment from the landlord.  Id.  Debtors ended up borrowing against the home that they own in order to start the business.  Id.  The name of the business was

Hollis West Indian Bakery & Restaurant Corp. ("HWI"), which opened on April 1, 2007. Id.

5.    On March 24, 2008 Ms. Sukhram also started an online business called Sukhram Travel, an online travel franchise from the parent company YTB International, Inc., ("YTB") Id. ¶ 3. She paid about $500 to join the franchise and was charged $50 in monthly maintenance fees. Id. Because she could not keep up with the maintenance fees, YTB shut down the site after six months. Id. The only commission Ms. Sukhram ever earned was about $12.00. Id.

6.    With regard to HWI, the first six months started out slowly and then the business picked up for about a year. Id. ¶ 4. However, the recession affected the performance of the business and eventually the sales were not enough to cover the overhead cost and other expenses for maintaining the business. Id. Debtors were forced to invest much of their personal money to keep up with the business insurance, electricity, gas, water bills, and the rent. Id. Mr. Sukhram's earnings from HWI was used toward business expenses. Id. Some months passed during which he went without any pay, but had to pay his two employees. Id. Debtors gradually lessened the number of employees at the business until they had no employees due to financial hardship. Id. Ms. Sukhram was also working full time as a claims adjustor for Chartis Insurance in New Jersey and would travel to Hollis, New York to help Mr. Sukhram with the business because they could not afford to hire any additional employees. Id. Their three children, ages 16, 11 and 8 at that time, were also helping Debtors with the business after school and they were not doing well in school as a result. Id. Debtors took out a business loan hoping to keep the business afloat.

Id. Then Mr. Sukhram's mother died and he inherited $50,000.00 from the insurance proceeds. Id. That money went into the business. Id.

7.    Eventually Debtors decided to change the name from Hollis West Indian Bakery & Restaurant to Sukhram's Restaurant & Beer Garden Corp. and obtained a liquor license hoping to attract more customers. Id. ¶ 5. Since the business was selling beer and wine, it was required to carry liquor liability insurance, which was an additional expense. Id. Ms. Sukhram then borrowed money from her mother, her sister, her brother, her cousins, and Mr. Sukhram's brothers and sisters to pay for business expenses. Id. The gas, light and phone service were cut off numerous times at the business and Debtors were forced to close the business. They later reopened the business when they were able to pay the utility bills. Id. Because of the hardship they faced with the business, Ms. Sukhram was putting her paycheck into it to cover expenses, and as result Debtors could not pay their household bills and home mortgage bill of $4,300. Id. Their gas and light was cut off at home during the winter several times because they had no money to pay the bills. Id.

8.    In July 2009, and until they left the business, Debtors could not pay the landlord any rent and were forced to leave the premises and shut the business down in 2010. Id. ¶ 6. The landlord kept all the equipment to sell so that he could recover the rent owed to him. Id.

9.    Debtors incurred high personal and business debts while trying to keep the business afloat. Id. ¶ 7. Ms. Sukhram sold all the jewelry they had to keep up with expenses, but they were still unable to pay the mortgage for about 6 to 9 months and their home was near foreclosure. Id. Around this time, Debtors applied for the Loan Modification Program, which brought their monthly mortgage payment down to about $2,300.00 per month. Id. Mr. Sukhram, unfortunately, was jobless for many months, but eventually

found a job as a driver delivering parts.  Id.  While that paycheck helped out somewhat,

Debtors were being harassed so much by creditors' phone calls and home visits that they

stopped answering their phones and were afraid to answer the doorbell.  Id.  One incident

in which a creditor served a subpoena on one the Debtors' children gravely affected the

Debtors' children so much that they do not answer the phones or door anymore.  Id. ¶ 8.

They have also had their bank account frozen because of a court order they received from

one creditor and the utility companies do not allow them to pay by check anymore.  Id.

Debtors tried to work out an arrangement with the creditor that froze their bank account,

but the creditor's demands were not possible based on Debtors' collective salary.  As a

result, the Debtors decided to file for bankruptcy protection.  Id.

### Events leading up to Trustee's 2004 examination request

10.    On March 30, 2011, Debtors commenced a voluntary case under Chapter 7 of the

Bankruptcy Code. On April 18, 2011 Debtors submitted to the Trustee a copy of their

bankruptcy petition along with supplementary documentation (Debtors' October 19, 2011

Opposition to 2004 Examination Docket #25, Ex. B, April 18, 2011 letter listing

documents submitted to Trustee), which included the following documents:

- Copy of Debtors' Certificate of Counseling
- Copy of Debtors' 2010 tax returns
- Copy of Debtors' paystubs
- Copies of Debtors' current bank statements
- Copies of Debtors' current business bank statements
- Copy of Debtors' Term Life statement
- Copy of Ms. Sukhram's 401(k) statement
- Copies of Mr. Sukhram's KBB valuation, title and proof of insurance for 2 vehicles
- Copies of Debtors' deed, appraisal and 2 payoff letters for home
- Copies of Debtors' business tax returns from 2008-2010
- Copies of Debtors' business bank statements prior to closing the account
- Copies of Ms. Sukhram's 3 month joint bank statements prior to closing the account.

11.    On May 3, 2011 the Trustee requested books and records for the Debtors' business.  A
section 341 meeting was held on May 10, 2011, which the Trustee adjourned to June 14,
2011.

### First request for documents

12.    On May 10, 2011, the Trustee's accountant, Bradley Harris, faxed to Debtors' counsel a
request for specific documents, to which the Debtors responded to on May 31, 2011
(Debtors' October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. C, May 10,
2011 request and response letter dated May 31, 2011) along with the following
documents:

- Copy of Debtors' personal 2008-2009 tax returns
- Copy of Debtors' business tax returns for 2007-2008
- 3 years of bank statements prior to filing date
- Copies of all life insurance policies evidencing present cash value
- Copies of all contracts and agreements

Debtors also provided explanations for the documents that they could not provide.

13.    On June 1, 2011, Debtors and Trustee stipulated to extend the time to object to the
Debtors' discharge and/or exemptions until September 12, 2011.  Debtors' October 19,
2011 Opposition to 2004 Examination Docket #25, Ex. D, Stipulation for extension of
time.  The Trustee did not require appearances for the June 14, 2011 meeting, but rather
requested more documents in reference to the businesses owned by the Debtors.

### Second request for documents

14.    On June 22, 2011, Bradley Harris faxed to Debtors' counsel another request for
documents and requested explanations for certain assets and accounts. Debtors' October
19, 2011 Opposition to 2004 Examination Docket #25, Ex. E, June 22, 2011 request and
response letter dated August 2, 2011 with accompanying affs. from Debtors.  On July 7,

2011 Debtors' counsel received a second notice to fulfill that same request. Debtors'

October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. F. Debtors' counsel

sent a letter to Bradley Harris explaining that the Debtors were still gathering documents

for the June 22, 2011 request. Debtors' October 19, 2011 Opposition to 2004

Examination Docket #25, Ex. G, June 25, 2011 letter to Bradley Harris. Debtors

responded to the June 22, 2011 request on August 2, 2011 (Debtors' October 19, 2011

Opposition to 2004 Examination Docket #25, Ex. E) and submitted the following

documents:

- Affidavits from Debtors in response to inquiries from the Trustee and statements indicating where do not have documents in their possession.
- Copies of statements for 5 business credit cards that encompassed the period from April 2007-December 2010
- Copies of statements for 10 personal credit cards that encompassed the period from December 2006-March 2011
- Canceled check from Citibank in the amount of $39,53.20 towards Country wide personal loan
- Canceled check from Citibank in the amount of $39,200.00 as payment towards "Manuel" to purchase the business, furniture and store fixtures
- Canceled checks for Hollis W. Indian Bakery and Restaurant Corp. from April 2007-September 2009
- Country wide home loan refinance agreement for February 2007
- Country wide home loan refinance agreement for November 2007
- Business Loan Express business loan agreement for June 2007
- Copies of Debtors' personal tax returns from 2008-2010
- Business tax returns from 2007-2010
- Document showing $150,000.00 from Mr. Sukhram's mother's life insurance after she passed away in January 2008
- Receipt from Borrego Springs for $100.00 for a transaction on June 16, 2010
- Advertisement from newspaper evidencing business posted a liquor license #1208051 to the public and liability insurance
- Copy of loan agreement made from Depwattie Jagdeo for $6,000.00 in cash on July 27, 2009 to Ms. Sukhram
- Loan agreement from Vanguard against Mr. Sukhram's 401(k) on October 27, 2010
- Tuition Payment Plan agreement for Queens Borough Community College
- Chase personal account ending in 2937 from December 2009-November 2010 that was opened in December 2009

- Citibank booklet evidencing the cost per canceled check and statements they charge because the bank refused to give a letter to show an exact cost

### Third request for documents

15.    On August 18, 2011, Bradley Harris faxed over another request for documents, acknowledging receipt of the documents provided on August 2, 2011.  Debtors' October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. H, August 18, 2011 request with response letter dated September 12, 2011 with accompanying affs. from Debtors. The Debtors fulfilled that request on September 12, 2011 and submitted the following documents:

- Affidavits from Debtors confirming their explanations as to why they have or do not have certain documentation
- Copy of Citibank agreement to pay out Mr. Sukramin's sister for her share from the mother's will
- Citibank statement showing the canceled check made out to Mr. Sukramin's brother for his share from the mother's will

### Order of discharge entered

16.    On September 13, 2011, this Court entered an order discharging both Debtors. Debtors' October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. I, Order discharging Debtors. On September 28, 2011 the Trustee filed a notice of discovery of assets.  On October 5, 2011 the Trustee filed an *ex parte* application for an order authorizing examination pursuant to Rule 2004(a) of the Federal Rules of Bankruptcy Procedure and an order directing the production of documents pursuant to Rule 2004(c) of the Federal Rules of Bankruptcy Procedure. On February, 29, 2012, this Court entered an order denying the Trustee's application under Rule 2004(c), noting the Debtors' objection indicating that they "have already submitted to the Trustee a plenitude of documents." On

March 21, 2012 each Debtor was questioned in detail by the Trustee and his accountant Mr. Plotzker in a Rule 2004(a) examination.

17.    The Debtors have provided everything that they have except for some statements that they are unable to obtain because they cannot afford to pay the bank for them, and some books and records for the business that they were not able to locate. Debtors' October 19, 2011 Opposition to 2004 Examination Docket #25, Ex. A ¶ 9.   The Debtors are undergoing a very difficult and stressful period financially and mentally and they feel that the Trustee's demands are unreasonable and duplicative.  Id. ¶ 1, 9.  Debtors state that they have not committed any fraud.  Id. ¶ 9.  If Mr. Sukhram needs to take off a day off from work to appear for another Rule 2004 examination, he will not be paid and the financial hardship that his family has been suffering will only be exacerbated. Id.

## ARGUMENT

**I.    The application for an order authorizing a Rule 2004 examination is both statutorily time barred under Rule 4004 of the Federal Rules of Bankruptcy.**

18.    The Trustee's application for an order granting a Rule 2004 examination to conduct discovery for the possible assets in this case is time-barred and inapplicable after discharge, and should be denied.  Fed. R. Bankr. P § 4004(a) established a clear deadline for when objections to discharge or exemptions can be filed, "no later than 60 days after the first date set for the meeting of the creditors under § 341(a).  If parties cannot meet the deadline, Fed. R. Bankr. P. § 4004(b) is clear,

> "On motion of any party in interest, after hearing on notice, the court may for cause extend the time to file a complaint objecting to discharge.  The motion shall be filed before the time has expired."

19.    Fed. R. Bankr. P § 9006(b)(3) similarly provides that "[t]he court may enlarge the time for taking action under Rule[] . . . 4004(a) . . . only to the extent and under the conditions stated in [that rule]." The U.S. Supreme Court also requires strict adherence to these deadlines. See <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act, and they produce finality"); <u>see also</u> <u>In re Chalasani</u>, 92 F.3d 1300,1310 (2d Cir. 1996) ("This deadline is an inflexible and mandatory rule, one not subject to a court's discretion. . . [the] important policy goal in bankruptcy law . . .[is] that *a debtor should obtain a fresh start in life and an opportunity to move ahead free of financial distress as quickly as possible*.") (emphasis added). Creditors, therefore, should not be allowed to backdoor around Rule 4004 with allegations after discharge. See <u>Chalasani</u>, 92 F.3d at 1310.

20.    In the present case, the Trustee's application is barred by Fed. R. Bankr. P. § 4004. Here, the parties agreed to extend the time during which the Trustee could object to a discharge. This Court granted an order extending time on June 1, 2011 and the Trustee was given until September 12, 2011 to object to the discharge. On September 13, 2011, this Court issued an order discharging both Debtors.

21.    The Trustee has had ample time to either file an objection to the discharge, or request another extension of time before this Court. It should also be noted that this is a no-asset case and that the Trustee has failed to find or identify the existence of any possible assets in his application despite the Debtors' extensive responses through documentation and testimony. The Debtors have already complied with numerous requests for documents and have suffered much financial and emotional hardship and wish to move forward with their lives.

22.    Further, a Trustee should not be allowed to request a Rule 2004 examination after this Court has fully administered the case and entered a discharge.  Rule 2004 is a discovery tool relevant in an active bankruptcy case and while the administration of the case is still in progress.  "Discovery of any matter that may affect administration of a debtor's estate only makes sense while estate administration still is in progress," otherwise Rule 4004 would be meaningless.  In re Jesse M. Hilsen, No. 87-11261 (S.D.N.Y. filed July 25, 2008).  The Trustee's objection to the discharge by the pursuit of an order granting a Rule 2004 Examination to conduct further discovery, therefore, is untimely and is in direct contravention of the explicit language and policy goals of Fed. R. Bankr. §§ 4004(b) and 9006(b)(3).  As such, the current application is statutorily barred.

## II.    The application for an order authorizing a Rule 2004 examination should be denied because it is conducted in bad faith and is being used to harass Debtors by deliberately causing them to incur undue burden and cost.

23.    The application for a Rule 2004 examination is improper and should be denied.  Debtors have fully complied with all of the Trustee's many requests for documents and explanations, attended a section 341 meeting of the creditors, and attended Rule 2004 examinations which were overseen by the Trustee.  Subjecting the Debtors to yet another lengthy and intrusive Rule 2004 examination would therefore be duplicative and cause an undue burden and cost upon the Debtors who have cooperated with the Trustee throughout these proceedings.

### A.    The examination request under Rule 2004 imposes an undue burden on the Debtors.

24.    The subject of a subpoena may also move to quash under Fed. R. Civ. P. 45(c), incorporated into Fed. R. Bankr. P. § 2004(c), if the subpoena subjects them to undue burden or cost.  In determining whether a request causes undue burden, a court may look

to the relevance of the request, the hardship to the party upon a denial, the breadth of the request, the period of time covered under the subpoena, the particularity with which the requested documents are described, and the burden and cost imposed on the subject of the subpoena.  See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (noting that whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) depends upon relevance and the burden imposed); see also Plant Genetic Sys., N.V. v. Northrup King Co., 6 F.Supp.2d 859, 861 (E.D. Mo. 1998) ("[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.") (quoting Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986)); In re Coffee Cupboard, 128 B.R. at 514 (noting that a court must balance the compelling interests of the parties, weighing the relevance and necessity of the information sought by the examination). A Rule 2004 examination by its very nature imposes a substantial burden and cost upon Debtors subjected to such an intrusive examination, which is often referred to as a "fishing expedition."  See In re Duratech Indus., Inc., 241 B.R. 291, 296 (E.D.N.Y. 1999) (finding that "however vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits;" such as where discovery is oppressive, over-reaching, conducted in bad faith or for improper purposes).

25.    Due to the nature of a Rule 2004 examination, we urge the Court to consider whether yet another Rule 2004 examination is truly necessary in this case before subjecting the Debtors to an intrusive examination and prolonging their case. As demonstrated herein and as reiterated in the past, the Debtors have cooperated with the Trustee's many

requests for documents and explanations. Under the circumstances, it is highly unlikely that the Debtors will be able to give the Trustee any more documents than what they have already provided. The Debtors will suffer an undue burden if the application for a Rule 2004 examination is granted as it will be duplicative of the efforts already made by the Debtors to comply with every request for documentation and explanations and is therefore prohibited under Fed. R. Civ. P. 45(c).

**B.      The examination request is being used to harass Debtors in bad faith and the Trustee has failed to demonstrate he has good cause.**

26.      The Trustee's application for a Rule 2004 examination is oppressive and is being used to harass Debtors. A party subject to examination may challenge a requestor's good faith under Fed. R. Bankr. P. § 2004(c), which relies on the procedural protections provided to a person subject to a subpoena under Fed. R. Civ. P. § 45(c)(1), (3)[1], when the request is

---

[1] **(c) Protecting a Person Subject to a Subpoena.**
**(1) Avoiding Undue Burden or Expense; Sanctions.**
A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
....
**(3) Quashing or Modifying a Subpoena.**
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

so broad that it well exceeds the limits of reasonableness or scope such that a court may infer an improper purpose, such as to harass or annoy. See Martin v. Schaap Moving Systems, Inc., No. 97-5042, 1998 U.S. App. LEXIS 15255, at *6-7 (2d Cir. April 21, 1998) (noting that courts may limit discovery under Rule 2004 when it is designed to abuse or harass); In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (noting that Rule 2004, like any other discovery method, may not be used to "annoy, embarrass or oppress the party being examined").

27.     The party requesting a Rule 2004 examination carries the initial burden of showing good faith by demonstrating that the request is necessary and relevant to the basic inquiry at issue in the proceedings, or that a denial of the request would cause a hardship or undue burden to the moving party. See In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004) (noting that good cause under Rule 2004 is generally shown if the examination "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice"); see also In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex.. 1998) (("[T]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." (quoting In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)). In demonstrating a showing of good faith, the requesting party must show more than the mere possibility that a document might be relevant or simply that "justice would not be impeded by production of the documents." See In re Coffee Cupboard, Inc.,

---

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (holding that just because "documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production").

28.    In the present case, the Trustee has failed to demonstrate good cause for his request for another Rule 2004 Examination. The Debtors have proof that they complied with each request and provided sworn affidavits on the issues for which the Trustee requested explanations. Where the Debtors did not possess or could not acquire certain documentation, they provided explanations. Since the Debtors already responded to the Trustee's requests for documents and have attended Rule 2004 examinations, any further document requests and examinations would be duplicative and wasteful.

2.    In his November 2, 2012 Application the Trustee states that with respect to the business entities in which the Debtors had an interest, the Trustee seeks documents extending over the six-year period prior to the filing of the chapter 7 petition. Application ¶ 9. As discussed in further detail herein, the Debtors provided ample documentation. The Trustee states in his motion that with regard to documents demanded that never existed or do not presently exist, an affidavit must be provided to explain why they do not exist. Motion ¶ 9. Affidavits were provided, as discussed herein. The Trustee states that further 2004 examinations are necessary in order to discover whether the petition is true and accurate. There have already been Rule 2004 examinations in which the petition was discussed in detail, as well as copious document production. If by now the Trustee has not been able to ascertain such basic information about the chapter 7 case, it is because the Trustee chooses to ignore the information that has been provided to him. The Debtors

should not be punished for the Trustee's noncooperation. The Trustee's Application should be denied.

29.    The questions appearing in Exhibit A to the Trustee's November 2, 2012 motion have already been answered to the best of the Debtors' ability or are beyond the scope of the administration of the Debtors' estate. Question 1 is beyond the scope of the administration of the estate and the Debtors have already provided all documents they could provide regarding the finances of HWI; they also provided the contact information of their accountant.

30.    The answers to Questions 2, 4, and 14 were already provided in the form of affidavits and testimony at the section 341 meeting and the Rule 2004 examinations; the restaurant experienced a slowdown in business, exacerbated by the economic recession that struck. The Debtors already discussed in excruciating detail the financial hardship they and their children suffered with the meltdown of their business. As much as the Trustee appears to enjoy seeing the Debtors relive all their years of financial hardship, such sadism is not prescribed by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

31.    With regard to Question 3, all documents that could be obtained from the Debtors' accountant were provided and the contact information for the accountant was provided. In connection with Question 5, the Debtors already stated during their 2004 examination that they did not recall every detail pertinent to this question, and they provided affidavits stating that they had provided documents they were able to provide and were not able to provide more.

32.    With regard to Questions 6 and 7, Schedule F was indeed amended on March 28, 2012. In response to Question 8, the Debtors already reiterated in their affidavits and in their

2004 examinations that they provided all the Mastercard account statements they were able to provide, and during the 2004 examination they discussed the particular transfer mentioned in Question 8. With regard to Question 9, a copy of the 401k statement was already provided.

33.    Question 10 appears to have been written without regard for English grammar. Unfortunately it makes no sense and therefore is difficult to answer.

34.    In response to Question 11, on April 18, 2011 a copy of the 2010 tax return was provided to the Trustee along with a copy of the chapter 7 petition. With regard to Question 12, a copy of the tuition payment plan was provided.

35.    With regard to Questions 13, 15 through 21, and 23 through 29, the Debtors have already explained—in their 2004 examinations, in their section 341 meeting, and in their affidavits and business records—the details of the finances of HWI, to the best of their recollection. They have also provided affidavits regarding the limits on their ability to obtain further documentation.

36.    It is not clear what needs to be explained in response to Question 30. It is not clear on what basis Mr. Sukhram would not be entitled to a tax refund. This question does not pose a legal issue. The same applies to Question 31; the Trustee has not stated on what basis the Mr. Sukhram would not be entitled to a tax refund.

37.    In sum, the Debtors have cooperated in full good faith with the administration of their chapter 7 case and there is no legal justification or rational purpose for further discovery in the present case.

**III.    This Court may properly award attorney's fees to Debtor in this case for Trustee Geltzer's use of the Rule 2004 examination provision in the Bankruptcy Code to harass and place an undue burden and cost on Debtors.**

38.     This Court has full discretion to grant attorney's fees against the Trustee in response to

his inappropriate use of a Rule 2004 examination for the purpose of harassment and

failure to take reasonable steps to avoid imposing an undue burden or cost on Debtors.

The rule governing subpoenas, Fed. R. Civ. P. § 45(c)(1), which is made applicable to

Bankruptcy cases under Fed. R. Bankr. P. § 9016, places an express duty upon the party

or attorney issuing the subpoena to take reasonable steps to avoid imposing undue burden

or expense on the person subject to that subpoena or face an appropriate sanction by the

court, which may include and is not limited to lost earnings and reasonable attorney's

fees.

39.     Additionally, the New York State Standards of Civility for the Legal Profession p. 2,

which states " A lawyer should not use any aspect of the litigation process, including

discovery and motion practice, as a means of harassment or for the purpose of

unnecessarily prolonging litigation or increasing litigation expenses."

40.     In the present case, the Trustee took no measure to work with Debtors to avoid imposing

on them an undue burden or expense when he served the Rule 2004 subpoena.  Rather,

the subpoena serves only to place further burden on Debtors and harass Debtors when the

Debtors have already complied with the numerous the Trustee's request handing over all

documents related to their businesses and personal accounts. The Trustee has therefore

failed to comply with his affirmative duty under § 45 to take all reasonable steps to avoid

imposing an undue burden and cost on Debtors, which is grounds for imposing attorney's

fees.

## **CONCLUSION**

41.    WHEREFORE, Debtors respectfully request that this Court use its discretion in issuing

an order to:

    a.    deny the Application;

    b.    impose attorney's fees and/or such other or further relief as this Court may deem

        just and proper to the Debtor under Fed. R. Civ. P. § 45(c)(1);

    c.    and grant such other and further relief that this court may deem to be just and

        proper.

Dated November 9, 2012                    By: /s/  Naresh M. Gehi, Esq.
                                          Naresh M. Gehi, Esq.
                                          Monica E. Ahmad, Esq.
                                          LAW OFFICES OF N.M GEHI, P.C.
                                          118-21 Queens Blvd., Suite 411
                                          Forest Hills, N.Y. 11375
                                          Telephone: 718-263-5999
                                          Counsel to Debtors

## CERTIFICATE OF SERVICE

Anthony Tse certifies, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am employed with the law firm of Gehi and Associates, attorneys for
   Debtors Lalita Devi Sukhram and Eshwar Nauth Sukhram.

2. On November 9, 2012, I caused copies of the following documents to be delivered to
   the following addresses, via Federal Express overnight delivery: The Chambers of the
   Honorable Judge Jerome Feller, 271 Cadman Plaza East, Room 1595, Brooklyn, NY
   11201; U.S. Trustee's Office, 271 Cadman Plaza East, Room 4529, Brooklyn, NY 11201
   (Attn: Marylou Martin, Esq.), Robert L. Geltzer, Esq., Law Offices of Robert L. Geltzer,
   1556 Third Avenue, Suite 505, New York, NY 10128

a) Objection to Trustee's Application for an Order Authorizing a Rule 2004(a) Examination
   and an Order Directing the Production of Documents

3. I certify under penalty of perjury that the foregoing is true and correct.


Executed on November 9, 2012


/s/ Anthony Tse
Anthony Tse